# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| PHILIP CHARLES DEVRIES and ) | |
| ANGIE MARIE DEVRIES, ) | |
| ) | Bankruptcy No. 19-00181 |
| Debtors. ) | |
| ) | |

## RULING ON OBJECTIONS TO PLAN CONFIRMATION

This matter came before the Court for hearing on confirmation of Debtors' Amended Chapter 12 Plan on October 8, 2019. Joseph Peiffer appeared for Debtors, Philip and Angie Devries ("Debtors"). Carol Dunbar appeared as the Chapter 12 Trustee ("Trustee"). Michael Thibodeau appeared for creditor Iowa Department of Revenue ("IDR"). Martin McLaughlin appeared for creditor United States Internal Revenue Service ("IRS"). Debtors sought confirmation of their Amended Chapter 12 Plan of Reorganization ("Plan"), which they filed on September 13, 2019. Both the IDR and the IRS filed objections to the Plan on September 30, 2019. Debtors, IDR, and IRS all filed their respective briefs on November 1, 2019. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## STATEMENT OF THE CASE

Debtors filed a voluntary Chapter 12 bankruptcy petition. They have filed their initial Plan of Reorganization, which this Court found was not confirmable. They have now filed an Amended Plan and IDR and IRS filed objections. IDR and

IRS have focused their objections on § 3.3 of the Plan requiring the IRS and IDR to deliver tax refunds to the estate for income withheld during the 2017 tax year. The IDR and IRS argue that the requested refunds already have been rightfully offset against the tax debt owed to those agencies, and their setoffs are valid under 11 U.S.C. § 553(a). Debtors argue that under 11 U.S.C. § 1232(a) income tax debt arising from the sale of farming property cannot be offset against tax collected already, and that collected taxes must be returned to the bankruptcy estate. Debtors further assert that allowing a taxing entity to keep withheld income would also violate general bankruptcy policy by allowing similarly-situated creditors to be treated differently. For the following reasons, this court overrules the IDR and IRS objections to this Plan.

## FACTUAL BACKGROUND

Debtors Philip and Angie DeVries are married. Philip has worked as a farmer for over 20 years. He spent most of that time working with his brother, Mark DeVries. Angie maintains employment outside the farm. In 2016, the DeVries brothers began mediation with their major secured creditor. They separated their business interest during that process. As part of this mediation, the Debtors were required to sell a significant amount of farmland and farming machinery. These sales took place in 2017, adding $986,612 in capital gains to the

Debtors' taxable income for the year.  See Second Stipulation Re: Confirmation Debtors' Plan 1, Oct. 28, 2019, ECF No. 80.

As a result of this sale, Debtors thus owed a significant amount of unpaid income taxes.  This amount was reduced somewhat by income tax witholdings from Angie DeVries' non-farm employment.  It is undisputed there was a total of $4,584 in witholdings for federal income taxes and $2,006 for taxes to the State of Iowa from Angie DeVries.  Stipulation Re: Confirmation Debtors' Plan 1, Oct. 23, 2019, ECF No. 79 (hereinafter "First Stipulation").  In order to gain relief from this heavy tax debt, Debtors filed bankruptcy in Chapter 12.  Debtors' Amended Plan states:

> Within sixty days of the Order of Confirmation of this Plan, the United States of America operating through the Internal Revenue Service shall refund the overpayment of 2017 income taxes in the amount of $4,584 to the Debtors, with this refund being paid by the Debtors to the Chapter 12 Trustee for payment of attorney fees.
> . . . Within sixty days of the Order of Confirmation of this Plan, the State of Iowa operating through the Iowa Department of Revenue shall refund the overpayment of 2017 income taxes in the amount of $4,584 to the Debtors, with this refund being paid by the Debtors to the Chapter 12 Trustee for payment of attorney fees.

Am. Chapter 12 Plan Reorganization § 3.3, 4–5, Sept. 13, 2019, ECF No. 66.  The amount of the requested refund from the Iowa Department of Revenue should be $2,006, not $4,584.  First Stipulation 1, ECF No. 79.

On September 13, 2019, Debtors filed a set of *pro forma* tax returns with the IDR and IRS for tax year 2017.  These returns show what the owed income tax

3

would have been without the farmland and equipment sales. The *pro forma* returns state that, but for those capital gains, Debtors would have been entitled to a tax refund for the full value of income taxes withheld from Angie DeVries' employment.

## CONCLUSIONS OF LAW AND DISCUSSION

### A. Existing Case Law

The only issue before the court is whether the priority-stripping provision of 11 U.S.C. § 1232(a) entitles the bankruptcy estate to a refund of withheld income taxes when those witholdings have been setoff against the tax debt. This is an issue of first impression among the bankruptcy courts. To date, only one case has analyzed the meaning of § 1232 since the 2017 amendments to the bankruptcy code updated the old priority-stripping provision in § 1222(a)(2)(A) and moved it to § 1232. See generally In re Pederson, 593 B.R. 785 (Bankr. N.D. Iowa 2018) (detailing the 2017 amendment to the Chapter 12 tax debt priority-stripping provision and analyzing the test for determining when de-prioritization is appropriate). This case did not analyze the effects of de-prioritization, only whether it was appropriate in those circumstances. Id. It did not address setoff at all. Id.

Additionally, from the time § 1222(a)(2)(A) was enacted in 2005 until the 2017 amendment moved the provision to § 1232(a), only one case analyzed the

4

priority-stripping provision in the context of a debtor requesting a refund from a tax creditor who offset withheld income against a de-prioritized debt: In re Legassick, 534 B.R. 362 (Bankr. N.D. Iowa 2015), rev'g, 528 B.R. 777 (Bankr. N.D. Iowa 2015).  In Legassick, this Court confirmed a Chapter 12 plan which de-prioritized certain tax debts owed to the IRS, including primarily post-petition tax debts.  Legassick, 528 B.R. at 779.  The IRS proceeded to offset future income tax witholdings against that de-prioritized, post-petition debt.  Id. at 779–80.  This Court eventually determined that the offset violated the confirmed plan and that the withheld income should be refunded to the debtors.  Legassick, 534 B.R. at 368–69.  Legassick is not helpful in resolving this case, because the Court decided the case on the grounds of res judicata—what the already confirmed plan required—without discussion of how § 553 and § 1232(a), then § 1222(a), interact.

### B.  Statutory Interpretation

With no case law on-point to guide the decision in this case, the Court looks again to the language of the Bankruptcy Code itself.  In this case, there are two statutes at the core of the arguments presented: 11 U.S.C. § 1232(a) and 11 U.S.C. § 553(a).  Debtors argue that these code sections are at odds with each other such that the "general-specific" canon of statutory interpretation should control the outcome of this case.  The IDR and IRS, on the other hand, argue that the plain meaning of the two code sections is clear and consistent.

Debtors rely on § 1232(a) to argue that the taxing agencies should refund their withheld income. Section 1232(a) states:

> Any unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation -- (1) **shall be treated as an unsecured claim** arising before the date on which the petition is filed; (2) **shall not be entitled to priority** under section 507; (3) shall be provided for under a plan; and (4) shall be discharged in accordance with section 1228.

11 U.S.C. § 1232(a) (2019) (emphasis added).

The IRS and IDR rely on § 553(a) to establish their rights in this case. Section 553(a) states:

> **Except as otherwise provided** . . . , this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a) (2019) (emphasis added). The Court agrees with Debtors that § 1232(a) specifically deals with how claims of government units based on pre-petition tax debt must be treated. It specifies they are to be treated as unsecured, non-priority obligations. The Court also agrees with Debtors that § 553(a) generally preserves a right to setoff mutual pre-petition obligations, where the claim of such creditor arose against Debtor before the case.

6

"General rules of statutory construction provide that **where two statutes conflict**, the **specific governs over the general**." In re Roberts, 594 B.R. 484, 491 (Bankr. N.D. Fla. 2018) (emphasis added); see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (alteration in original) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)).  Since § 553(a) is a statute of general applicability and § 1232(a) deals with specific scenarios, § 1232(a) will control if there is a conflict between the two statutes.

The Court now therefore determines whether the two statutes actually conflict.  On its face, § 1232(a) says nothing about clawing back tax witholdings.  The usual effect of the section is to reset qualifying tax debts as ordinary unsecured, non-priority debts.  See also Knudsen v. I.R.S., 581 F.3d 696, 718 (8th Cir. 2009) (abrogated on other grounds) (referring to the predecessor of § 1232 as "a priority-stripping provision as opposed to a tax provision").  However, the full effects of § 1232(a) are left a bit unclear under the plain language of the statute.  Congress did not elaborate on statements that qualifying tax debt "shall be treated as an unsecured claim" and "shall not be entitled to priority," which are unclear as to their effect here.  11 U.S.C. § 1232(a)(1)-(2).  These statements are ambiguous when applied here to the question before the Court.  In § 1232(a)(3) and (4),

7

Congress provided some further clues useful to this analysis that these debts "shall be provided for under a plan" and "shall be discharged."  11 U.S.C. § 1232(a)(3)-(4).  These are both qualities consistently attached to ordinary, unsecured debts.  If subsections (3) and (4) are intrepeted separately from the statute as a whole, they appear on their face to be redundant—only repeating.  The best way to interpet sections (3) and (4) is to avoid redundancy and give meaning to all four parts.  Rimini Street, Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 881 (2019) ("If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a **clue** as to the better interpretation of a statute." Though, "[s]ometimes the better overall reading of the statute contains some redundancy.").

Sections (3) and (4) of § 1232 thus provide some "clue" to the statute's meaning and particularly note that prepetition tax debts of this type "shall be discharged."  However, a simple textual analysis leaves some ambiguity about whether the language effectively prevents offset under § 553(a).  Given the ambiguity in § 1232(a), the Court will look to legislative history for additional guidance.  See United States v. Donruss Co., 393 U.S. 297, 303 (1969) ("Since the language of the statute does not provide an answer to the question before us, we have examined in detail the relevant legislative history.").  The Senate considered adopting a similar provision as early as January 20, 1999, when Senator Charles

8

Grassley introduced a bill titled "SAFETY 2000." 145 Cong. Rec. 1113 (1999) (statement of Sen. Charles Grassley regarding S. 260). In introducing that bill, Senator Grassley noted that the purpose of the bill was to alleviate the "crushing tax liabiliy" that family farmers face "if they need to sell livestock or land in order to reorganize their business affairs." Id. The bill was intended to "free up capital for investment in the farm, and help farmers stay in the business of farming." Id.

The SAFETY 2000 bill was later swept into the omnibus "Bankruptcy Reform Act of 1999", though Senator Grassley's comments introducing the bill on March 16, 1999 added no further commentary regarding the priority-stripping provision. Bankruptcy Reform Act of 1999, S. 625, 106th Cong. § 1004 (1st Sess. 1999); 145 Cong. Rec. 4592–93, 4620 (1999) (statement of Sen. Charles Grassley). Though that bill ultimately failed to become law, Senator Grassley continued to propose the addition of a priority-stripping provision for capital gains tax debts to Chapter 12, adding minimal commentary on that section, every year. See, e.g., Bankruptcy Reform Act of 2000, S. 3186, 106th Cong. § 1003 (2d Sess. 2000) (introduced without comment, 146 Cong. Rec. 22133 (2000)); Bankruptcy Reform Act of 2001, S. 420, 107th Cong. § 1003 (1st Sess. 2001) (introduced without comment, 147 Cong. Rec. 2681 (2001)); Protection of Family Farmers and Family Fisherman Act of 2002, S. 3174, 107th Cong. § 4 (2d Sess. 2002) (introduced without comment, 148 Cong. Rec. S11574 (daily ed. Nov. 19, 2002)). The intent

9

of those bills reflected in the Legislative History was to de-prioritize treatment of capital gains taxes to free up funds for reorganization and boost reorganization possibilities for family farmers.

The priority-stripping provision was eventually added to the Bankruptcy Code in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 1003, Pub. L. No. 109-8, 119 Stat. 23, 186.  During the debates and hearings surrounding BAPCPA, Senator Grassley added comments largely echoing his sentiments from 1999.  He stated: "The bill **lets farmers** in bankruptcy **avoid capital gains tax**.  This is very important because it will **free up resources** to be invested in farming operations **that otherwise would go down the black hole of the Internal Revenue Service**.  Farmers need this chapter 12 safety net."  151 Cong. Rec. 3038 (statement of Sen. Charles Grassley) (emphasis added).

After its passage into law, the priority-stripping provision was amended once again in 2017.  That amendment came as a reaction to the courts interpreting the statute as Congress did not intend.  This application of the statute against Congress' intent was adopted by the U.S. Supreme Court in the case of Hall v. United States.  566 U.S. 506 (2012).  In Hall, the Supreme Court decided that capital gains taxes from postpetition farm sales were not entitled to deprioritization under the old § 1222(a)(2)(A).  Id. at 512–13.  Four justices dissented.  Id. at 524.

The dissent criticized the majority opinion for "prevent[ing] the Amendment from carrying out its basic objective."  Id.  Relying on Senator Grassley's statements in 1999, noted above, the dissent concluded "the relevant Bankruptcy Code language can be and is better interpreted in a way that would give full effect to the Amendment."  Id. at 528, 530.

In the 2017 amendment, Congress specifically sought to overrule the "unfortunate result" in Hall and "restore[] Congress's original intent."  163 Cong. Rec. S3216 (daily ed. May 25, 2017) (statement of Sen. Charles Grassley); Additional Supplemental Appropriations for Disaster Relief Requirements Act, 2017, § 1005, Pub. L. No. 115-72, 131 Stat. 1224, 1232–33 (incorporating the Family Farmer Bankruptcy Clarification Act of 2017 (S. 1237) into the Bankruptcy Judgeship Act of 2017 (S. 1107), and including the Bankruptcy Judgeship Act of 2017 as Division B of this law).  In statements supporting the 2017 amendment, Senator Grassley reiterated pevious comments regarding the core purpose of the priority-stripping provision.  The Senator stressed that "[t]he bill clarifies that bankrupt family farmers reorganizing their debts . . . may treat capital gains taxes owed to the government, arising from the sale of farm assets during the bankruptcy, as general unsecured claims."  163 Cong. Rec. S3216 (daily ed. May 25, 2017) (statement of Sen. Charles Grassley).  Because of this, the "bill will give

11

family farmers a chance to reorganize successfully and remove the **Internal Revenue Service's veto power over plan confirmation**." Id. (emphasis added).

The Senator made further statements that the priorities structure with regard to capital gains taxes "creates problems for the family farmer who needs cash to pay creditors and reorganize," and that the structure creates "a harsh result and does not make sense if the goal is to give family farmers a fresh start." Id. He noted that the Senate's "**goal . . . was to relieve family farmers from having their reorganization plans fail because of certain tax liabilities owed to the government.**" Id. (emphasis added). The de-prioritization provision is ultimately about "help[ing] family farmers who are facing hard times." Id.

As all of this Legislative history shows, Congress intended the priority-stripping provision to be interpreted to promote successful reorganizations of family farming operations—by limiting the impact of the substantial capital gains taxes that tend to follow the sale of farm land or equipment—and to put that capital into the farmers' hands—not the taxing authorities. Allowing taxing entities to setoff withheld taxes against these capital gains taxes runs directly counter to these objectives.

Stated another way, the meaning of § 1232(a) contradicts the general provision in § 553(a) allowing creditors to maintain their setoff rights in bankruptcy, the specific provision in § 1232(a) controls. The Court thus concludes

12

that § 1232(a) allows family farmers who have capital gains tax debt under Chapter 12 process to require taxing entities to issue a refund of withheld income taxes to the bankruptcy estate.  Therefore, Debtors are allowed to require a refund of their withheld taxes in this case and the IDR and IRS objections to the portion of § 3.3 in the Plan seeking such a refund for the 2017 tax year are overruled.

## CONCLUSION

Because the Court overrules the IDR and IRS objections to the Plan, the Court finds Debtors' Plan confirmable.

**SO ORDERED.**

Dated and Entered:  April 28, 2020

_____
Thad J. Collins
Chief Bankruptcy Judge